```
         IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
SRIRUPA GHOSHTAGORE, MD
                                *
         Plaintiff,
v.                              *       CIVIL NO.: WDQ-04-3442

CLIFTON T. PERKINS HOSPITAL
CENTER                          *

         Defendant.             *

*   *   *   *   *   *   *   *   *   *   *   *   *
```

MEMORANDUM OPINION AND ORDER

Srirupa Ghoshtagore, MD sued her employer Clifton T. Perkins Hospital Center (the "Hospital") for race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII)[1]. Pending is the Hospital's motion for summary judgment. For the following reasons, the Hospital's motion for summary judgment will be granted.

I.  BACKGROUND

Dr. Ghoshtagore is an Asian woman born in Calcutta, India. *See* Opp. Ex. 1 ("Ghoshtagore Aff.") at p. 1. Since June 1998, she has worked as a psychiatrist in the Hospital's maximum security ward. See *id*. In this position, she is responsible for twenty-eight of the Hospital's most violent patients. *See* Mot. Summ. J. Ex. A("Ghoshtagore Depo.") at pp. 53, 55.

---

[1] 42 U.S.C. §§ 2000e *et seq.* (2005).

On September 29, 2003, a patient physically and verbally assaulted Dr. Ghoshtagore.  *See id.* at pp. 18-19. As a result, she sustained physical injuries and was on medical leave for approximately two months.  *See id*. at pp. 20-21, 24.  On December 15, 2003, Dr. Ghoshtagore requested a transfer to either the medium or minimum security wards, where the patients are not considered violent.  *See id*. at p. 76. The Hospital, however, denied her request.  *See id*.

In January 2004, Dr. Ghoshtagore contacted the Hospital's Fair Practices Officer, Hilda Davis, to discuss the denial of her transfer request.  *See* Mot. Summ. J. Ex. D ("Davis Aff.") at ¶3. To address Dr. Ghoshtagore's concerns, Davis thereafter arranged a meeting with the Hospital's CEO, Richard Fragala, Clinical Director, Dennis Barton, and Director of Human Resources, Michael Faulkner.  *See id.* at ¶6.  During this meeting, Ghoshtagore was offered a transfer to one of the Hospital's intake units.  *See id.* Although an intake unit is within a maximum security ward, the unit is staffed with two psychiatrists who are responsible for approximately nine to ten patients each.  *See* Mot. Summ. J. Ex. B ("Barton Aff.") at ¶9.  The danger of being assaulted, therefore, is significantly reduced.  *See* Opp. Ex. 1 ("Ghoshtagore Aff.") at pp. 5-6.  Dr. Ghoshtagore, however, declined this offer.  *See* Mot. Summ. J. Ex. A ("Ghoshtagore Depo.") at pp. 80, 83.

On July 21, 2004, Dr. Ghoshtagore filed a charge of

2

discrimination with the Maryland Commission on Human Relations and the United States Equal Employment Opportunity Commission (the "EEOC"). On July 27, 2004, the EEOC issued Dr. Ghoshtagore a right to sue letter. On October 26, 2004, Dr. Ghoshtagore filed this suit.[2]

## II. LEGAL DISCUSSION

A.      Motion for Summary Judgment

1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask ... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The court must view the facts and the reasonable

---

[2]On May 5, 2005, Dr. Ghoshtagore was again assaulted by a maximum security ward patient. *See* Opp. Ex. 1 ("Ghoshtagore Aff.") at p.4. She requested another transfer to a medium or minimum security ward. However, the Hospital denied her request. *See id.*

inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  A "scintilla" of evidence is not sufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

    2.   Denial of Transfer Request

Dr. Ghoshtagore maintains that the Hospital denied her transfer request because of her race and national origin.

Generally, a denial of transfer does not implicate Title VII.  *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).  However, a Title VII claim may arise when the denial had some "significant detrimental effect" on the employee.  *Id.*  Although significant detrimental effects generally include change in pay, rank and responsibility, exposure to dangerous conditions is also recognized as a significant detrimental effect.  *See Von Gunten v. State of Maryland*, 243 F. 3d 858, 868 (4th Cir. 2001); *Boone*, 178 F.3d at 256 (recognizing that working conditions are a factor in considering whether an employer's actions rises to Title VII liability).  As a transfer to a medium or minimum security ward may have significantly improved Dr. Ghoshtagore's working conditions, Title VII applies.

Title VII provides that it "shall be unlawful to

4

discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race or national origin." 42 U.S.C. §§ 2000e-2(a).

The elements of a Title VII discrimination claim are: (1) membership in a protected class; (2) adverse employment action; and (3)unfavorable action supporting an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

This initial showing requires the plaintiff to produce "facts which would enable the fact-finder to conclude with reasonable probability that in the absence of any further explanation, the adverse employment action was the product of discrimination." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).  A prima facie case merely creates a presumption of discrimination.  The employer can rebut this presumption by articulating a legitimate, nondiscriminatory reason for the allegedly adverse employment action.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).  The plaintiff always bears the ultimate burden of proving that the employer's articulated reasons were not its true reasons but were a pretext for discrimination.  *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (*citing Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The Defendant contends that the Plaintiff's claim fails

5

because she cannot establish a prima facie case.  The Plaintiff counters by stating that she has adduced sufficient evidence for a prima facie case.  Even assuming that the Plaintiff can establish a prima facie case, her claim fails. The Defendant offers a nondiscriminatory reason for its denial of the Plaintiff's transfer request.  The Defendant asserts that there were no available positions in either the medium or minimum security wards.  The record demonstrates that during the Plaintiff's tenure no psychiatrist was transferred or hired for either the medium or minimum security wards.  *See* Mot. Summ. J. Ex. B ("Barton Aff.") at ¶¶6-7; Ex. C ("Faulkner Aff.") at ¶¶6-7.

  The Plaintiff, however, asserts that upon a former psychiatrist's retirement, there was an available position in the medium security ward.  *See* Opp. Ex. 1 ("Ghoshtagore Aff.") at p. 2. The Plaintiff does not offer any evidence to substantiate this claim.  *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003)("unsupported speculation is not sufficient to defeat a summary judgment motion").  Even assuming that a psychiatrist retired, this alone does not establish that there was an available position.  The undisputed evidence is that the alleged vacancy was never advertised, and the Plaintiff acknowledges that it was never filled.  *See* Opp. Ex. 1 ("Ghoshtagore Aff.") at p. 2.  The Plaintiff's affidavit concedes that none of the several psychiatrists hired since the alleged

6

position became available was given that position. *See id.* at pp. 2-3; *See also Janey v. N. Hess Shoes, Inc.*, 268 F.Supp. 2d 616, 625 (D.Md. 2003) (if plaintiff cannot establish that alleged open position was filled by someone--particularly someone outside of plaintiff's protected class--plaintiff's discrimination claim fails).

The Plaintiff also attempts to rebut the Defendant's proffered reason by stating that two other psychiatrists were immediately transferred following assaults. *See* Opp. Ex. 1 ("Ghoshtagore Aff.") at p.3. This is insufficient to survive summary judgment. The Plaintiff does not state whether these employees were transferred to the medium or minimum security wards. Nor does the Plaintiff state that these assaults occurred when the Defendant contends that there were no available positions in the less dangerous wards. Instead, she simply states that "previously" other psychiatrists had been assaulted and immediately transferred. *See id.*

It is undisputed that after the Plaintiff's September 2003 assault, she was offered a transfer to an intake unit. In her affidavit, the Plaintiff admits that an intake unit position is more desirable than her current position because the likelihood of being assaulted by a patient is diminished. *See id.* at pp. 5-6. The Plaintiff's own evidence, therefore, suggests that the Defendant tried to accommodate the Plaintiff after she was

7

assaulted.  The Plaintiff, however, is merely dissatisfied with the Defendant's choice of accommodation.  In her opposition, the Plaintiff suggests that the Defendant should have given her a position in the medium or minimum security wards currently filled by a Caucasian American and transferred that physician to the maximum security ward.  *See* Opp. at p. 12.  The Court's sole concern is whether the Defendant's reason for denying the Plaintiff's transfer request was discriminatory, not whether the Defendant should have displaced another employee to accommodate the Plaintiff.  Although the Court sympathizes with the Plaintiff, it will not substitute its judgment for the employer.  *See Evans*, 875 F.Supp. at 1120 ("In a Title VII or ADEA case, a court should not act as a "super-personnel department").

As Dr. Ghoshtagore has offered no evidence demonstrating that the Hospital's reason for denying her transfer request was pretextual, there is no genuine dispute as to a material fact.

CONCLUSION

For the reasons discussed above, the Hospital's motion for summary judgment will be granted.


<u>November 7, 2005</u>              _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge